[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App. R. 11.1(E) and Loc. R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct. R.Rep.Op. 3(A).
 {¶ 2} Defendant-appellant Dena D. Wilbon was charged with two counts of felonious assault, violations of R.C. 2903.11(A)(1) and (A)(2). Wilbon appeals from a judgment of conviction by the trial court following a bench trial. On appeal, Wilbon now raises four assignments of error.
 {¶ 3} In her first assignment of error, Wilbon contends that the trial court erred because there was "insufficient evidence to support the court's finding of guilty." Wilbon argues that the trial court improperly rejected her affirmative defense of self-defense. In the second assignment of error, Wilbon contends that the state failed to prove all elements of the offenses. She argues that the state presented no evidence that the razor blade used against the victim was a deadly weapon. Additionally, Wilbon argues that the trial court's finding of guilt was against the manifest weight of the evidence. Since the two assignments of error are interrelated, we address them together.
 {¶ 4} In testing the sufficiency of the evidence, this court looks at the evidence presented in the light most favorable to the prosecution and determines if any rational trier of fact could have found that all the essential elements of the charged offense were proved beyond a reasonable doubt.[1] R.C. 2903.11(A) defines felonious assault in this manner: "(A) No person shall knowingly: * * * (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."[2] A deadly weapon means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.[3]
 {¶ 5} Testimony was given by the person who alerted others to make an emergency call for assistance immediately after Wilbon had cut the victim. He testified that the victim and Wilbon had engaged in several separate fistfights, which had involved other persons on occasion as well. After these altercations had ended and while the victim stood about three feet away, Wilbon rose from a couch and initiated another round of fighting, but this time she had a single-edge razor secreted in her hand. The witness testified that no one saw the razor in Wilbon's hand until the victim realized that she had been cut, at which point the fighting ceased.
 {¶ 6} Wilbon testified that the razor was on a table and later on the floor, and that she "had to cut [the victim]." Wilbon used the razor as a weapon. The trier of fact reviewed explicit photographs of the victim's severe cuts and saw, in the course of the victim's testimony, several of the victim's scars, among them a three-inch scar from the victim's left eye down to her lip. The victim still had great difficulty seeing out of one eye. In viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found that the state had proved the elements of felonious assault beyond a reasonable doubt. Testimony from the state's witnesses was sufficient to establish that Wilbon had caused serious physical harm to the victim by means of a deadly weapon.
 {¶ 7} Next, in order to establish a right of self-defense involving deadly force, Wilbon had to prove the affirmative defense by a preponderance of the evidence:[4] (1) that she was not at fault in creating the situation; (2) that she had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of force; and (3) that she did not violate any duty to retreat or avoid the danger.[5]
 {¶ 8} There is nothing in the record that indicates that the physical altercation between Wilbon and the victim occurred in Wilbon's residence, which might have vitiated the duty to retreat. There was testimony that the apartment belonged to Leroy Clark. While the participants gave conflicting versions of events that culminated in the victim's severe wounds, there was unequivocal testimony from one witness that the earlier fighting had ceased when Wilbon initiated a new round, this time with a razor hidden in her hand, and that this assault was unprovoked by the victim. The credibility of the witnesses was a determination for the trier of fact.[6] Simply put, the trier of fact chose not to accept Wilbon's version of events.[7] Thus, it was entitled to conclude that Wilbon had failed to prove her affirmative defense by a preponderance of the evidence.
 {¶ 9} Wilbon next argues that her conviction for felonious assault was against the manifest weight of the evidence. In determining whether a conviction was against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[8] Given the testimony of the state's witnesses, we cannot say in this case that the jury lost its way and created such a manifest miscarriage that Wilbon's conviction for felonious assault must be reversed. As a result, we overrule the first and second assignments of error.
 {¶ 10} In the third assignment of error, Wilbon contends that the trial court erred by failing to convict her of the lesser offense of aggravated assault. Aggravated assault is not a lesser-included offense of felonious assault, but an offense of inferior degree.[9] The difference between felonious assault and aggravated assault is that the latter offense includes the mitigating circumstance that the offender was under the influence of sudden passion or rage brought on by serious provocation occasioned by the victim.[10] Provocation, to be serious, must be reasonably sufficient to bring on extreme stress, and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force.[11] In determining whether provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded her at the time.[12] Wilbon argues that she was being beaten by the victim, as well as others, and that she believed that using the razor was the only way to stop them. But Wilbon had an opportunity to calm down from the evening's previous fistfights.[13] Generally, past events do not constitute adequate provocation.[14] The testimony shows that Wilbon was seated away from the victim at the time she picked up the single-edge razor, hid it in her hand, and reengaged the victim in a new round of fighting, severely injuring her. Wilbon not only initiated a new round of fighting without provocation, but escalated the level of violence by using the razor. Thus, the third assignment of error is overruled.
 {¶ 11} In the fourth assignment of error, Wilbon contends that her constitutional rights were violated because she was deprived of the effective assistance of trial counsel. Wilbon argues that additional witnesses were available and should have testified to support her version of events and to impeach the credibility of the only witness, other than the two combatants, who did testify about the events resulting in the victim's injuries. "Reversal of convictions on ineffective assistance requires the defendant to show `first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.'"[15] To hold that a defendant was prejudiced requires a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.[16] A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[17] Counsel's decision whether to call a witness falls within the rubric of trial strategy and generally will not be second-guessed by a reviewing court.[18] On this record, Wilbon has failed to demonstrate that the outcome of the trial would have been different had there been testimony given by additional witnesses. As our review of the record does not disclose that counsel was constitutionally ineffective, the fourth assignment of error is overruled.
 {¶ 12} Therefore, the judgment of the trial court is affirmed.
 {¶ 13} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App. R. 27. Costs shall be taxed under App. R. 24.
Sundermann, P.J., Doan and Winkler, JJ.
[1] State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717;State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[2] See R.C. 2903.11(A); State v. Barnes, 94 Ohio St.3d 21,2002-Ohio-68, 759 N.E.2d 1240.
[3] See R.C. 2903.11(E)(1), R.C. 2923.11(A).
[4] See State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, syllabus.
[5] See State v. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 55, paragraph two of the syllabus; Barnes, supra, at 24, 2002-Ohio-68,759 N.E.2d 1240; State v. Miller, 1st Dist. No. C-020096, 2002-Ohio-5812.
[6] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[7] See State v. Jackson (Dec. 14, 2000), 10th Dist. No. 00AP-444.
[8] Thompkins at 387, 1997-Ohio-52, 678 N.E.2d 541; Tibbs v. Florida
(1982), 457 U.S. 31, 102 S.Ct. 2211.
[9] See State v. Deem (1988), 40 Ohio St.3d 205, 210, 533 N.E.2d 294;State v. Mack, 82 Ohio St.3d 198, 200, 1998-Ohio-375, 694 N.E.2d 1328.
[10] See Deem at 210-211, 533 N.E.2d 294; R.C. 2903.12(A).
[11] See Deem, paragraph five of the syllabus.
[12] See id.
[13] Compare State v. Torres, 3rd Dist. No. 4-01-06, 2002-Ohio-1203 (the evidence established that the conflict was in continual motion from the start of the fight to the ultimate assault).
[14] See State v. Mack (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328;State v. Torres, 3rd Dist. No. 4-01-06, 2002-Ohio-1203.
[15] State v. Cassano, 96 Ohio St.3d 94, 112-113, ¶ 105,2002-Ohio-3751, 772 N.E.2d 81, citing Strickland v. Washington (1984),466 U.S. 668, 669, 104 S.Ct. 2052; accord State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373.
[16] See State v. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373, paragraph three of the syllabus.
[17] See Strickland, 466 U.S. at 669, 104 S.Ct. 2052.
[18] See State v. Hanna, 95 Ohio St.3d 285, 304, ¶ 118,2002-Ohio-2221, 767 N.E.2d 678; State v. Treesh, 90 Ohio St.3d 460, 490,2001-Ohio-4, 739 N.E.2d 749.